ROBERT LAW, Plaintiff in Error, *v.* CYRUS BENTLEY, Defendant in Error.

### AGREED CASE FROM COOK.

This lease and assignment construed.

THIS action was covenant, brought in the Circuit Court of Cook county, by Cyrus Bentley against Robert Law and Ezekiel R. Hooper.

By consent of parties, a *nolle prosequi* was entered by Bentley as to defendant Hooper, and Cyrus Bentley and Robert Law made and filed an agreed case in said cause, which is as follows:

It is hereby stipulated and agreed, by and between the respective parties to this suit, that a jury be waived, and the same tried by the court upon the following statement of facts, agreed upon as the case in this suit, viz.:

On the first day of February, A. D. 1854, the plaintiff, Cyrus Bentley, made a lease in writing to John McCardel, bearing that date, which is to the effect following, viz.: Indenture made February 1st, 1854, by Cyrus Bentley to John McCardel, in and by which said Bentley demised to said McCardel the following premises:

A block of two certain buildings, thirty-seven feet in width, four stories in height, numbered 19 and 21 Dearborn street, Chicago, consisting of stores in first story, (second story not leased to McCardel) the third and fourth stories were leased and were unfinished rooms for storage purposes.

Said demise was from the first day of February aforesaid to the first day of May, A. D. 1864, at the rent of two thousand dollars per annum, payable quarter-yearly, to wit, on the first day of May, August, November and February in each year. Said lease being in the usual form, and containing the usual covenants in leases. The lease is set out as follows:

" This indenture, made this first day of February, in the year

of our Lord one thousand eight hundred and fifty-four, between Cyrus Bentley, of the city of Chicago, etc., party of the first part, and John McCardel, of Albany, etc.

" Witnesseth, That the said party of the first part, for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by the said party of the second part, his executors, administrators and assigns, hath demised and leased to the said party of the second part, all those premises situate, lying and being in the said city of Chicago, known and described as follows, to wit :

" All that part of lot five (5), in block sixteen (16), in the original town of Chicago, described as follows, to wit : commencing on Dearborn street, at a point eighty and forty-seven hundredths ($80\frac{47}{100}$) feet from the corner of Lake street, thence east eighty (80) feet to the east line of said lot, thence north sixty-seven and twenty-eight hundredths ($67\frac{28}{100}$) feet to the south line of an alley running north of said lot, thence west six (6) feet, thence south thirty and sixty-seven hundredths ($30\frac{67}{100}$) feet, thence west seventy-four (74) feet to Dearborn street, thence south to the place of beginning. Also the two brick stores erected and standing upon said premises, known as stores numbered nineteen and twenty-one (19 and 21).

"Excepting, saving and reserving therefrom the second stories of said two stores now appropriated and used for offices, and the entrance way and stairs leading thereto ; also the right and privilege of free and uninterrupted access by the tenants and occupants of said second story, through the alleys and over the grounds of said premises, to the privy belonging to said premises, and the right to use said privy by the tenants of said second story, in common with the said party of the second part, his heirs, assigns, tenants and leasees.

" It being hereby intended to demise and lease to the said party of the second part the lower and two upper stories of said stores, the alley and grounds connected therewith.

" To have and to hold the said above described premises (excepting that portion of the premises above specified), with the appurtenances, unto the said party of the second part, his executors, administrators and assigns, from the first day of February, in the year of our Lord one thousand eight hundred and fifty-four, for and during, and until the first day of May, in the year of our Lord one thousand eight hundred and sixty-four, being for ten years and three months.

" And the said party of the second part, in consideration of the leasing of the premises aforesaid, by the said party of the first part, to the said party of the second part, doth covenant and agree with the said party of the first part, his heirs, execu-

tors, administrators and assigns, to pay the said party of the first part, as rent for the said demised premises, the sum of twenty thousand and five hundred dollars ($20,500), in manner following : Five hundred dollars ($500) on the first day of May next, and the like sum on each of the first days of August and November, in the year eighteen hundred and fifty-four, and the like sum on each of the first days of February, May, August and November, in each of the years thereafter, until the whole sum is paid ; it being hereby intended that said party of the second part shall pay said party of the first part for said premises so demised as aforesaid, an annual rent of two thousand dollars ($2,000), payable in quarter annual payments of five hundred dollars ($500).

" And the said party of the second part further covenants with the said party of the first part, that at the expiration of the time in this lease mentioned, he will yield up the said demised premises to the said party of the first part, in as good condition as when the same were entered upon by the said party of the second part, loss by fire or inevitable accident, or ordinary wear, excepted.

" And it is further covenanted and agreed by and between the parties hereto, that the said party of the second part may make connections between said premises and the premises situated north and adjacent thereto, and intended to be occupied also by said party of the second part, by means of doors and passage-ways, or in other ways, at the option of the said party of the second part, and may raise the roof of the premises hereby demised, and build additions thereto, provided said passage-ways and connections between said demised premises and the said premises north and adjacent thereto, be closed and restored at the expiration of this lease, and provided the raising of said roof, and building additions to said demised premises shall in no wise injure or impair the value of said demised premises, and provided the said party of the first part may repossess himself, or his heirs, executors, administrators or assigns, may repossess themselves of said demised premises, in as good and valuable and unincumbered condition as the same now are, ordinary wear and tear, fire, or other inevitable accident excepted.

" It is expressly understood and agreed by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payments, whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants herein contained, to be kept by the said party of the second part, his executors, administrators or assigns, it shall and may be lawful for the said party of the first part, his heirs, executors, administrators,

agent, attorney or assigns, at their election to declare said term ended, and into the said demised premises, or any part thereof, either with or without process of law, to reënter, and the said party of the second part, or any other person or persons occupying, in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the said premises again to repossess and enjoy, as in the first and former estate, and to distrain for any rent that may be due thereon upon any property belonging to said party of the second part, whether the same be exempt from execution and distress by law or not, and the said party of the second part, in that case, hereby agrees to waive all legal rights he may have to hold, restrain any such property under any exemption laws at that time in force in this State, or in any other way ; meaning and intending hereby to give the said party of the first part, his heirs, executors, administrators or assigns, a valid and first lien upon any and all the goods, chattels, or other property belonging to the said party of the second part, as security for the payment of said rent, in manner aforesaid, any thing hereinbefore contained to the contrary notwithstanding.

"And if at any time said term shall be ended, at such election of said party of the first part, his heirs, executors, administrators or assigns, as aforesaid, or in any other way, said party of the second part, his executors, administrators and assigns, do hereby covenant and agree to surrender and deliver up said above described premises and property, with all the additions and improvements thereto made by the said party of the second part, peaceably to said party of the first part, his heirs, executors, administrators and assigns, immediately upon the determination of said term as aforesaid. And if he shall remain in possession of the same ten days after notice of such default, or after the termination of this lease, in any of the ways above mentioned, he shall be deemed guilty of a forcible detainer of said premises under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcibly or otherwise, with or without process of law, as above stated.

" And it is further covenanted and agreed by and between the said parties, that all additions and improvements made to said premises by said party of the second part, shall, at the termination of this lease in any of the ways above mentioned, remain and inure to the benefit of the said party of the first part, his executors, administrators and assigns.

" And it is further covenanted and agreed by and between the said parties, that if at any time before the determination of this lease in any of the ways above mentioned, said stores shall be

destroyed or rendered untenantable by fire, then and thereupon said rents thereafter to become due shall cease and determine, until said buildings shall be rebuilt or repaired, as the case may be.

"And it is also further covenanted and agreed by said parties, that if said buildings, so injured or destroyed by fire as aforesaid, shall be rebuilt or repaired by said party of the first part at a cost exceeding the sum of forty-five hundred dollars, ($4,500), the present cost and stipulated value of the buildings demised by these presents, the said party of the second part covenants and agrees to pay the said party of the first part, his executors, administrators, or assigns, as rent for said buildings and premises, the said sum of two thousand dollars, and also the additional sum of ten per cent. of the excessive cost of said new buildings over and above the said sum of forty-five hundred dollars ($4,500), per annum, in quarter annual payments, on the days above mentioned for the payment of rents, for and during the remaining unexpired term of the said ten years and three months after said newly erected or repaired buildings shall be completed and ready for occupation.

"In witness whereof, etc."

McCardel took possession, under said lease, of the premises therein described, and so continued until some time in the summer of 1855, when, becoming embarrassed, and judgments recovered against him, a bill was filed in chancery against him by creditors, who procured a receiver to be appointed of the property and estate of said McCardel, including the said leasehold interest. The defendant, Ezekiel R. Hooper, was appointed such receiver, who as such, on the 15th day of August, A. D. 1855, sold the said leasehold estate, and assigned said lease to the defendant, Robert Law.

Afterward, on the 22nd day of August, A. D. 1855, the said Law assigned one-half of his interest in the said lease to the said Hooper.

Afterward, and on the 21st day of December, A. D. 1855, the said defendants, Law and Hooper, made an assignment of the said lease to Joseph H. Martin, which said assignment is upon the back of the lease in the plaintiff's hands, which said assignment is the same set out in the declaration in this cause, and is in the words and figures following, that is to say:

"For value received, we do hereby transfer and assign to Joseph H. Martin all our right and title to the within lease, and the property therein described, except the two store rooms in the building herein described, on Dearborn street, one formerly occupied by Alfie Columbo as a barber shop, and the other at present occupied by Bates & Griffin as a safe store, the rent of which said stores are reserved to our exclusive use and benefit during the duration of this lease, the said Martin

agreeing to pay the whole rent reserved in this lease, during the duration thereof.
" Witness our hands and seals this 21st day of December, A. D. 1855.

ROBERT LAW. [SEAL.]
E. R. HOOPER. [SEAL.]"

And at the same time and place the said defendants, Law and Hooper, took back an instrument in writing, from the said Joseph H. Martin, of which the following is a copy, viz. :

" Whereas the undersigned, Joseph H. Martin, has this day purchased all the interest of John W. Burgess in and to a certain contract, executed by Robert Law and E. R. Hooper to said Burgess, for the sale of the fixtures and furniture and leases of the property situated on Dearborn street, Chicago, formerly known as the McCardel House, and now as the Burgess House ; and whereas it was stipulated and agreed in said contract that the said Burgess is to pay Cyrus Bentley and John W. Steele and Ira Couch the full amount of rent reserved in said leases on the entire property specified therein ; and whereas, by the terms of said contract, the said Law and Hooper reserved unto their own exclusive use and benefit the two store rooms in said building leased by said Bentley, with the privilege of renting out the same, and receiving the rent therefor to their own use and benefit, which reservation was intended to operate as a premium or bonus to said Law and Hooper, in the sale of said property ; or, in other words, that said Burgess is to pay the rent thereof to said Bentley, and said Law and Hooper are to rent the same to any person they may think proper, and are to receive the rent thereof to their own use, during the duration of said lease, with the single prohibition that they shall not rent the same to be kept as an eating or drinking saloon. Now, therefore, in consideration of the premises, I, the said Joseph H. Martin, do agree to pay to said Bentley, Steele and Couch, and their assigns, all the rent reserved in said leases by them, and to allow the said Law and Hooper to rent said store rooms in said building, owned by said Bentley, and receive the rent thereof to their own exclusive use and benefit, provided they do not rent the same to any person to be kept as an eating or drinking saloon, and do also agree and bind myself, my heirs and assigns, to pay the rent reserved on the whole of said leases, as aforesaid, from time to time, as the same becomes due, so as to secure to said Law and Hooper the full benefit of the proceeds of the rent of said store rooms, during the duration of said leases, until the first day of May, A. D. 1864.

" Witness my hand and seal this 21st day of December, A. D. 1855.

"JOHN F. CLEMENTS.        J. H. MARTIN. [SEAL.]"

The assignee of Law and Hooper—J. H. Martin—on the 22nd day of December, A. D. 1855, entered into the possession of the said demised premises, except the portions excepted in said assignment as aforesaid, and continued to occupy as aforesaid until the first day of November, A. D. 1857, when he left them. Martin paid all the rent payable in and by the said lease, and other leases made by plaintiff to other parties and assigned to Martin, which rents in all, including that payable by the lease aforesaid, amounted to $825 per quarter, to the plaintiff Bentley, personally, up to the first day of November, A. D. 1857; but the installment due on the day last mentioned, to wit, amounting to $825 as aforesaid, not having been paid by said Martin, the plaintiff, Bentley, on the 6th day of November, 1857, issued his distress warrant against the goods and chattels of said Martin, and caused the same to be levied on the furniture in the house, or which had been in it when occupied by said Martin. Whereupon, William Lill, who claimed the said furniture by virtue of a chattel mortgage given thereon by said Martin, replevied the same of the plaintiff. Afterward, and on the 4th day of February, 1858, the installment of rent payable on the first day of said last mentioned month, (to wit, $825), being due and unpaid, the plaintiff issued another distress warrant against the goods and chattels of said Martin, and caused the same to be levied thereon. Whereupon the said Lill, claiming the same as aforesaid, sued out a second writ of replevin and replevied the said goods and chattels from the said plaintiff. Afterward, and on or about the fourth day of March, 1858, the said replevin suits and the said distress proceedings being still pending, an agreement of compromise was made and entered into by the said Lill and Martin of the one part, and said plaintiff Bentley of the other part, in and by which it was mutually agreed that the said Lill was to withdraw the said replevin suit and dismiss the same. The said Martin was to make his two promissory notes for four hundred and twelve dollars and fifty cents each, with interest from the first day of November, 1857, to said Bentley, in four and six months, which were to be signed by said Lill; and the said Bentley was to dismiss his distress proceedings aforesaid, and release and fully discharge the said Martin of and from all claims and liabilities of said Martin on account of the rents provided for in and by the said lease made by said Bentley to said McCardel and assigned as aforesaid. Whereupon, and in pursuance of said agreement of compromise, the said Lill then and there dismissed the said replevin suits; the said Martin and Lill made and delivered to the said Bentley the said two promissory notes as aforesaid; and the said Bentley then and there dismissed his

said distress proceedings as aforesaid, and under his hand and seal, executed and delivered to said Martin the said release and discharge, releasing and discharging said Martin fully from all the rents provided for in and by the said lease as aforesaid, and all claims arising therefrom.

That when the said respective promissory notes became due, they were each paid in full by the said William Lill.

Previous to the first of November, 1857, the said Hooper assigned all of his interest in said lease to the said Law; therefore, by consent of all parties hereto, a *nolle prosequi,* as to said Ezekiel R. Hooper, is to be entered.

The said defendant Law, sub-let the said portions of the said demised premises, which were excepted and reserved in and by the assignment of Martin, to tenants, and received the rents therefor, from the first day of November, A. D. 1857, to the first day of May, 1858. It is further agreed, that the proportionate yearly value of the portions of said demised premises excepted and reserved as aforesaid in said assignment, as compared with the whole yearly rent reserved in and by the said lease from the plaintiff to McCardel, is the full sum of fourteen hundred dollars. The plaintiff claims to recover in this suit one-half of the said proportionate yearly value of the said reserved portions as aforesaid, or in other words, such proportionate value, from the first day of November, A. D. 1857, to the first day of May, A. D. 1858, and if he is entitled to recover, the damages shall be one-half of said proportionate value as aforesaid.

If, upon this agreed case, the Circuit Court shall decide that the plaintiff is entitled to recover as aforesaid, and render judgment against them, or either of them, such decision shall be deemed and taken to have been duly excepted to, and this agreed case shall, upon an appeal being taken or a writ of error brought to the Supreme Court, be certified by the clerk of this court, together with the judgment rendered in and by the said Circuit Court to the Supreme Court, and error assigned therein in the Supreme Court without any further portions of the record in this cause transmitted therewith.

On the 28th day of December, 1859, the said case was submitted to the court, and the said court then and there decided that the said plaintiff, Cyrus Bentley, was entitled, under said agreed case, to recover against said Robert Law. To which decision and ruling of the court, the said Robert Law, by his counsel, then and there excepted. Judgment was rendered in favor of the said Bentley against said Law for $700, and defendant appealed to this court.

The said Law assigns for error that the court erred in

deciding that the said Bentley was upon said agreed case entitled to recover.

That the court erred in rendering judgment for damages only.

SCATES, McALLISTER & JEWETT, for Appellant.

C. BENTLEY, *per se.*

*Per curiam.* The facts presented by this agreed case are so confused and unsatisfactory that it is impossible to come to any conclusion entirely satisfactory to ourselves. We suppose the object of the parties is to get a construction of the release mentioned in the record. We think the release only discharged Martin for the rent which had accrued up to the time of the settlement which was made and when the release was executed.

The judgment is affirmed.

*Judgment affirmed.*